IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TODD B.,[1]

        Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Case No. 3:17-cv-01337-SB

**OPINION AND ORDER**

_____

**BECKERMAN, U.S. Magistrate Judge.**

        Todd B. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Court has jurisdiction to hear

this appeal pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses

the Commissioner's decision because it is based on harmful legal error and not supported by

substantial evidence.

---

       [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party or parties in this case. Where applicable, this opinion uses
the same designation for a non-governmental party's immediate family member.

## BACKGROUND

Plaintiff was born in May 1964, making him forty-eight years old on September 24, 2012, the alleged disability onset date. (Tr. 15, 27, 68.) Plaintiff has a General Equivalency Diploma and past relevant work as a service advisor. (Tr. 27, 42, 59.) Plaintiff alleges disability due to pancreatitis, as well as depression and anxiety. (*See* Tr. 40, stating that Plaintiff is disabled due primarily to "severe pancreatitis," which causes "severe abdominal pain," noting that Plaintiff's primary care physician has also "mentioned" diagnoses of anxiety and depression, and stating that Plaintiff's knee issues resolved after undergoing surgery, but the "stress from that surgery . . . really triggered the pancreatitis to kind of flare, and flare more often, and get worse").

On September 20, 2011, approximately one year before the alleged disability onset date, Plaintiff visited his primary care physician, Dr. Marc Moroye ("Dr. Moroye"), regarding his blood pressure and pancreatitis-related pain. (Tr. 252.) Dr. Moroye noted that Plaintiff's blood pressure was "doing okay," but he continued to smoke "about half a pack a day" and showed no sign of quitting "any time soon," that Plaintiff's anxiety was "stable" and "doing fine on his current Wellbutrin" prescription, that Plaintiff's pain level had "been high due to his chronic pancreatitis," and that he would continue to refill Plaintiff's prescription for oxycodone because Plaintiff's referral to a pain clinic "did not work out" and Plaintiff was "up-to-date" on his urine drug screens. (Tr. 252.) Dr. Moroye also "strongly recommended" that Plaintiff quit smoking. (Tr. 252.)

On November 29, 2011, Plaintiff presented for a follow-up visit with Dr. Moroye regarding his pancreatitis-related pain. (Tr. 248-49.) Dr. Moroye noted that Plaintiff's pain waxed and waned, producing "good days and bad days," Plaintiff's anxiety and depression were "stable," and they would continue to treat Plaintiff's pancreatitis with medication because he was

not interested in seeing a gastroenterologist again or "getting [more] blood work done." (Tr. 249.)

On September 24, 2012, the alleged disability onset date, images of Plaintiff's left knee revealed the following: "Degenerative joint disease [in the] medial compartment. Chondrocalcinosis of the menisci may reflect underlying calcium pyrophosphate deposition disease." (Tr. 292.)

On November 8, 2012, Plaintiff presented for a follow-up visit with Dr. Moroye. (Tr. 242.) Dr. Moroye noted that Plaintiff continued to experience pain and discomfort due to his pancreatitis," but he did not "feel the need to see" a gastroenterologist. (Tr. 243.) Dr. Moroye added that Plaintiff continued to suffer from left knee discomfort, recent images of Plaintiff's knee showed signs of a "previous surgery," but "there was nothing else that was necessarily torn in the knee," Plaintiff was "trying to wean himself" off pain medication, which Dr. Moroye felt "in the long run is a safer thing for him to do," and Plaintiff did not appear depressed or anxious. (Tr. 242-43.)

On February 3, 2013, Dr. Moroye noted that Plaintiff continued to complain about "a significant amount" of pancreatitis-related pain, that he had to take Plaintiff "off the pain medications because he did fail his pain contract with [Dr. Moroye] by smoking marijuana," that he "knew" that Plaintiff was going to fail his pain contract, but Plaintiff "really found that the marijuana seemed to help even more than the medications, but he is still having a lot of abdominal discomfort," and that Plaintiff had not seen a gastroenterologist or had "any testing done on his pancreas" for "a couple of years." (Tr. 241.) In addition, Dr. Moroye observed that Plaintiff underwent knee surgery earlier that year and "things [were] slowly healing up." (Tr.

241.) Dr. Moroye ordered images of Plaintiff's abdomen and tests to check Plaintiff's pancreatic enzymes.

On February 10, 2013, Plaintiff underwent a computed tomography ("CT") scan of his abdomen based on complaints of pancreatitis-related pain. The CT scan revealed the following: "Minimal stranding of the fat between the pancreatic head and the duodenum, to a lesser degree than on previous study. This suggests mild pancreatitis, without associated complications visible." (Tr. 286.)

On March 8, 2013, Plaintiff visited Dr. Moroye regarding his blood pressure and signs of rectal bleeding. Dr. Moroye noted that Plaintiff did not complain of external hemorrhoids, Plaintiff was provided with a suppository because Dr. Moroye believed that he was suffering from internal hemorrhoids, Plaintiff was going to see a gastroenterologist at the end of the month, and Plaintiff "continue[d] to smoke medical marijuana, which obviously did limit what [Dr. Moroye] can do in terms of [prescribing] narcotics or sedatives" to treat any medical conditions. (Tr. 239-40.)

On August 20, 2013, Dr. Moroye noted that Plaintiff's "GI actually came back negative," which caused him to question whether Plaintiff's intermittent abdominal pain was being caused by his pancreas "versus a different functional bowel issue," such as irritable bowel syndrome. (Tr. 236-37; *see also* Tr. 297, "From review [of] old records it appears that there is debate about whether patient's symptoms are caused by chronic pancreatitis versus irritable bowel syndrome or both.").

On May 7, 2013, Plaintiff underwent an upper endoscopic ultrasound, which revealed, *inter alia*, "[m]ild age related changes of the pancreas without evidence for chronic pancreatitis." (Tr. 364.)

On May 23, 2013, Plaintiff presented for a follow-up visit with Dr. Elliot Joo ("Dr. Joo"), a gastroenterologist. Dr. Joo noted that Plaintiff reported that he recently had "some wine which lead to severe abdominal pain for the next 3 days," he was not currently experiencing pain, that he "will go several months without any pain, and then be doubled over with pain for several weeks or months," and his constipation issues had improved "tremendously" on Miralax. (Tr. 350.) Dr. Joo diagnosed Plaintiff with "[a]bdominal pain of unclear etiology." (Tr. 351.) Dr. Joo also stated that he suspected Plaintiff's "symptoms may be related to functional abdominal pain such as irritable bowel since [Plaintiff's] symptoms improve after passing gas and defecation." (Tr. 351.)

On January 6, 2014, Dr. Kordell Kennemer ("Dr. Kennemer"), a non-examining state agency psychologist, completed a psychiatric review technique assessment. (Tr. 72-73.) Dr. Kennemer concluded that the limitations imposed by Plaintiff's mental impairments failed to meet or medically equal the criteria of listings 12.04 (affective disorders) or 12.06 (anxiety disorders).

On January 7, 2014, Dr. Martin Kehrli ("Dr. Kehrli"), a non-examining state agency physician, completed a physical residual functional capacity assessment. (Tr. 73-74.) Based on his review of the record, Dr. Kehrli concluded that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk about six hours in an eight-hour workday; and push and pull in accordance with his lifting and carrying restrictions. Dr. Kehrli added that Plaintiff does not suffer from any postural, manipulative, visual, communicative, or environmental limitations.

On February 6, 2014, Dr. Moroye noted that Plaintiff was "still in the process of filing for disability for his pancreas issues though[] the workup through GI actually did come back looking

okay." (Tr. 234.) Dr. Moroye added that Plaintiff was still "doing the medical marijuana" to treat his chronic pain, that Plaintiff visited a doctor at Kaiser "for the first time in 10 years," and that the doctor at Kaiser provided Plaintiff with "a prescription for clonazepam," because the doctor "apparently" did not "ask him about any illicit drug use." (*Id.*) In addition, Dr. Moroye stated the following: "Chronic pancreatitis. Again, the question is, is this still a major issue[?]" (Tr. 235.)

On May 16, 2014, Dr. Joshua Boyd ("Dr. Boyd"), a non-examining state agency psychologist, completed a psychiatric review technique assessment. (Tr. 84-85.) Dr. Boyd agreed with Dr. Kennemer's finding that Plaintiff's mental impairments failed to satisfy listings 12.04 or 12.06.

Also on May 16, 2014, Dr. Martin Lahr ("Dr. Lahr"), a non-examining state agency physician, completed a physical residual functional capacity assessment. (Tr. 86-87.) Based on his review of the record, Dr. Lahr agreed with Dr. Kehrli's functional assessment in all relevant respects.

On July 17, 2014, Plaintiff visited Dr. Moroye and reported that he continued to suffer from "intermittent pain, which does significantly limit his ability to really do anything." (Tr. 320.) Dr. Moroye stated the following: "Again, he did get a workup last year through GI, who is not necessarily convinced that he had [a] chronic issue, though [Plaintiff] vehemently disagrees. I did talk[] to him about getting another opinion, but he does not want to pursue this further." (Tr. 320.)

On September 3, 2015, Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 35-66.) Plaintiff testified that he lives with wife, he is able to drive, he last worked in September 2012, he stopped working because he experienced a flare-up of his pancreatitis that lasted two to three weeks and the flare-ups "became more

persistent" thereafter, he received unemployment benefits after he stopped working because he thought he "might still be able to do some part-time work," and he can no longer work due to the flare-ups of his pancreatitis, which occur between three to fifteen days per month on average, lead to "severe pain" that "radiates through to the back," and cause issues with constipation and diarrhea. (Tr. 42-45.) Plaintiff added that oxycodone is effective in treating his flare-ups, he is no longer taking medication to treat depression or anxiety and has never engaged in any therapy, he does not experience any physical limitations unless there is a flare-up of pancreatitis, it took him roughly four weeks to recover from the most recent surgery on his left knee, and he has not smoked cigarettes or consumed alcohol (two pancreatitis triggers) for several years. (Tr. 45-47, 52, 55-56.) Plaintiff also clarified that he is "still down for a few days" after taking pain medication. (Tr. 54.)

The ALJ posed a series of hypothetical questions to a Vocational Expert ("VE") who testified at Plaintiff's hearing. First, the ALJ asked the VE to assume that a hypothetical worker of Plaintiff's age, education, and work experience could perform light work that involves no more than "frequent climbing of ramps and stairs, climbing of ladders and scaffolds, stooping, kneeling, crouching, and crawling." (Tr. 60.) The VE testified that the hypothetical worker could perform Plaintiff's past work as a service advisor as that position is generally performed in the national economy. (Tr. 61.) The VE further testified that the hypothetical worker could perform other work that exists in significant numbers in the national economy, including work as a cashier II, self-service store attendant, and mail room sorter. (Tr. 62.) Responding to the ALJ's second hypothetical, the VE confirmed that Plaintiff does not possess skills that would transfer to a sedentary job. (Tr. 62-63.) The VE also confirmed that the hypothetical worker could not

sustain employment if he was "off task 20 percent of the time" or absent twice a month on an ongoing basis. (Tr. 63-64.)

In a written decision issued on December 24, 2015, the ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 404.1520(a)(4), and found that Plaintiff was not disabled. *See infra*. The Social Security Administration Appeals Council denied Plaintiff's petition for review, making the ALJ's decision the Commissioner's final decision. Plaintiff timely appealed.

## THE FIVE-STEP SEQUENTIAL ANALYSIS

### I.    LEGAL STANDARD

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is presently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## II.     THE ALJ'S DECISION

The ALJ applied the five-step sequential process to determine if Plaintiff is disabled. (Tr. 15-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 24, 2012, the alleged disability onset date. (Tr. 17.) At step two, the ALJ determined that Plaintiff had the following severe impairments: "[D]egenerative joint disease of the left knee, spine disorder, and disorder of the gastrointestinal system." (Tr. 17.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 19.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work that involves no more than frequent stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, and scaffolds. (Tr. 20.) At step four, the ALJ determined that Plaintiff could perform his past relevant work as a service advisor. (Tr. 27.) The ALJ then proceeded to step five and concluded, in the alternative, that Plaintiff was capable of performing other work that exists in significant numbers in the national economy, including work as a cashier II, self-service store attendant, and mail room sorter. (Tr. 28.) Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.

**ANALYSIS**

**I. STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* If the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the district court may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**II. DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony; and (2) failing to provide specific and legitimate reasons for discounting the opinion of Plaintiff's treating physician, Dr. Moroye. (Pl.'s Opening Br. at 2.) As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial

evidence. Accordingly, the Court reverses the Commissioner's denial of Plaintiff's application for benefits.

### A.    Plaintiff's Symptom Testimony

#### 1.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

///

### 2. Application of Law to Fact

Here, there is no evidence of malingering and the ALJ determined that Plaintiff has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or symptoms alleged. (*See* Tr. 21, "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"). Accordingly, the ALJ was required to provide clear and convincing reasons for discrediting Plaintiff's testimony. (*See* Def.'s Br. at 2, indicating that clear and convincing reasons standard applies). As explained below, the ALJ appropriately found that Plaintiff's testimony was undermined by the objective medical evidence. The ALJ, however, failed to provide any other clear and convincing reasons for discounting Plaintiff's testimony. Because subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the Court cannot affirm the ALJ's symptom analysis. *See, e.g.*, *Reichley v. Berryhill*, ---- F. App'x ---- , 2018 WL 2327196, at *1 (9th Cir. May 23, 2018) (noting that the medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects, but "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence") (citation and quotation marks omitted).

### a. Conflicting Medical Evidence

The ALJ discounted Plaintiff's testimony based on conflicting objective medical evidence. (*See* Tr. 23, "I do not find his allegations fully credible because they lack support from the medical record. . . . I find the claimant's subjective complaints and alleged limitations are not fully persuasive or consistent with . . . the medical evidence[;]" *see also* Tr. 26-27, "Because his subjective complaints exceeded objective findings, I consider the claimant's testimony with caution."). By way of example, the ALJ highlighted Plaintiff's testimony that his pancreatitis

PAGE 12 – OPINION AND ORDER

flare-ups (i.e., Plaintiff's primary barrier to employment) are completely debilitating because he "can hardly move" due to the severity of the pain, and yet, when Plaintiff visited the emergency room on October 7, 2014, complaining of an acute flare-up of his pancreatitis, Plaintiff exhibited "normal range of motion," "normal strength," and the absence of any "focal neurological deficit." (Tr. 23; *see also* Tr. 54-55, testifying that Plaintiff's pain has be a nine or ten on a ten-point scale in order to go to the emergency room, that Plaintiff's severe pain will "usually" subside with medication, but Plaintiff will go the emergency room when his medication does not alleviate the pain, and that Plaintiff has visited the emergency room on one occasion since the alleged onset date because he was in "excruciating" pain and "to the point where [he] almost called an ambulance[;]" Tr. 376, noting that Plaintiff visited the emergency room on October 7, 2014, and that Plaintiff's physical examination revealed, among other things, "[n]ormal" range of motion, "normal strength," "[n]o focal neurological deficit," and that he was "uncomfortable but in no distress").

It is well settled that "an ALJ may consider objective medical evidence as a factor 'in his credibility analysis.'" *Samuels v. Colvin*, 658 F. App'x 856, 857 (9th Cir. 2016) (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Plaintiff argues that the ALJ's reliance on conflicting medical evidence was inadequate here because the ALJ offered only "a general, nonspecific finding." (Pl.'s Opening Br. at 12, citing, among other cases, *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). In *Brown-Hunter*, the ALJ "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged.'" *Brown-Hunter*, 806 F.3d at 493. The Ninth Circuit held that the ALJ erred by failing "to identify

specifically which of [the claimant's] statements [the ALJ] found not credible and why." *Id.* at 493-94.

Here, the ALJ specifically identified which of Plaintiff's statements she found not credible (i.e., Plaintiff's testimony that his flare-ups of pancreatitis are completely debilitating because he "can hardly move" due to the severity of the pain) and she explained why (i.e., when Plaintiff was experiencing an acute flare-up of pancreatitis post-onset date, an emergency room physician noted normal and benign findings). It is reasonable for the ALJ to discount a claimant's testimony on this ground. *See Reyes v. Berryhill*, 716 F. App'x 714, 714-15 (9th Cir. 2018) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony, and noting that the ALJ "properly concluded" that the claimant's "testimony about back pain . . . was not corroborated by the medical evidence, including a normal x-ray and an orthopedic surgeon's finding of a full range of motion in the lumbar spine").

Plaintiff argues that the ALJ's symptom analysis was nevertheless flawed because she drew conclusions that were "not supported by evidence that a reasonable mind would accept as adequate." (Pl.'s Reply at 1.) Specifically, Plaintiff argues that the ALJ (1) assumed that his emergency room visit "reflects the worst pain [he] was ever in, which is not supported by the record," and (2) failed to account for the fact there had been "a marked decrease" in his pain between the onset and the time of his exam. (Pl.'s Reply Br. at 2-3.) Plaintiff also argues that the emergency room physician's findings "support[] his testimony that he is unable to work during pain," noting, among other things, that the "ability to move his arms and legs during the ER exam . . . does not contradict [his] testimony that his abdominal pain during flares is so severe that he succumbs to the fetal position in bed to get through them as best he can." (Pl.'s Reply Br. at 3.)

Although Plaintiff interprets the medical evidence differently, the Court finds that the ALJ's interpretation of the evidence was rational and therefore must be upheld. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Plaintiff testified that he only visits the emergency room when he is in severe pain and that he is essentially bedridden during an acute flare-up of his pancreatitis. (*See* Tr. 47, "But when you are having a flare, you really can't do anything physical except lay in bed? A. Correct[;]" Tr. 53, "Does it get so bad you go to the emergency room? A. It can, and it has. It's excruciating. It's like a knife going through you. I mean, I don't know how many people have been stabbed with a knife, but that's the best way I can explain it[;]" Tr. 54-55, testifying that Plaintiff's pain has be a nine or ten on a ten-point scale in order to go to the emergency room, that Plaintiff's severe pain will "usually" subside with medication, but Plaintiff will go the emergency room when his medication does not alleviate the pain, and that Plaintiff has visited the emergency room on one occasion since the alleged onset date because he was in "excruciating" pain and "to the point where [he] almost called an ambulance"). It was reasonable for the ALJ to conclude that Plaintiff's testimony regarding the severity of his pancreatitis flare-ups was undermined by the emergency room physician's physical examination findings. (*See* Tr. 374, "Time [p]atient [s]een face to face: [d]ate & time 10/07/2014 06:00:07[.] History source: Patient. . . . Additional information: . . . Nursing Triage Note: Reason for visit history 10/07/2014 4:26 . . . P[atient] presents with abdominal pain that radiates from front to back that is worsening since last night. . . . History of Present Illness[:] The patient presents with abdominal pain. . . . [He] reports gradual onset of epigastric pain radiating to his back last night that worsened at 0200 this morning. He confirms the pain is a flare up of his pancreatitis. . . . The onset was 4 hours ago. The course/duration of symptoms is constant.

The character of symptoms is sharp. The degree at onset was moderate. . . . The degree at present is moderate[;]" Tr. 376, noting that Plaintiff's physical examination revealed, *inter alia*, "[n]ormal" range of motion, "normal strength," "[n]o focal neurological deficit," and that he was "uncomfortable but in no distress").

The ALJ cited other conflicting medical evidence throughout her decision. For example, before concluding that Plaintiff's testimony was inconsistent with the medical evidence, the ALJ noted that a February 2013 CT scan of the abdomen suggested "mild pancreatitis without associated complications visible," that March 2013 medical records stated that "the only significantly elevated lipase was back on September 9, 2003," that a May 2013 endoscopic ultrasound showed "some age-related changes to pancreas, but no evidence chronic pancreatitis," that February 2014 medical records showed that "the workup through gastroenterology actually did come back looking okay," and that August 2013 medical records also noted that a "workup through gastroenterology actually came back negative." (Tr. 21-22.) As discussed below, the ALJ cited the above medical evidence to discount Dr. Moroye's opinion on the ground that it was inconsistent with the medical evidence. (*See* Tr. 24-26, noting that Dr. Moroye's opinion was "not consistent with the record as a whole" or "with the relatively mild diagnostic findings of record," and noting that a "February 2013 abdominal CT scan show[ed] minimal stranding fat between pancreatic head and duodenum suggesting mild pancreatitis without visible complications," a "GI workup . . . came back negative," a "GI workup came back looking okay," Plaintiff was "in no distress" following a flare-up of his pancreatitis, and "there was no evidence of chronic pancreatitis on his EUS exam"). It is reasonable to infer, then, that the ALJ was also referencing the above medical evidence when she discounted Plaintiff's based on conflicting medical evidence. *See Lindsey v. Comm'r Soc. Sec. Admin.*, No. 12-0552-SU, 2013 WL

2250369, at *4 n.2 (D. Or. May 22, 2013) ("[W]hen [assessing] a credibility determination, the court is 'not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion.'") (citation omitted); *see also Fenton v. Colvin*, No. 6:14–00350–SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) ("The Court is not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but the Court is permitted to consider additional support for a ground on which the ALJ relied.") (citation omitted).

For these reasons, the Court concludes that substantial evidence (more than a mere scintilla of evidence, but less than a preponderance) supports the ALJ's decision to discount Plaintiff's testimony as inconsistent with the objective medical evidence. (*See also* Tr. 234-35, noting that Plaintiff was "still in the process of filing for disability for his pancreas issues though[] the workup through GI actually did come back looking okay," and reiterating that "the question is, is this [chronic pancreatitis] still a major issue[;]" Tr. 236-37, noting post-onset that Plaintiff's "GI actually came back negative[;]" Tr. 320, "Again, he did get a workup last year through GI, who is not necessarily convinced that he had [a] chronic issue, though [Plaintiff] vehemently disagrees. I did talk[] to him about getting another opinion, but he does not want to pursue this further[;]" Tr. 351, indicating that a gastroenterologist diagnosed "[a]bdominal pain of unclear etiology").

### b.    Effective Treatment

The Commissioner argues that the ALJ also appropriately found that medications have been effective in treating Plaintiff's pain symptoms.[2] (Def.'s Br. at 4.) This is a clear and

---

[2] The Commissioner further argues that the ALJ discounted Plaintiff's testimony because he engaged in conservative treatment. (Def.'s Br. at 4.) This is the only other reason cited by the Commissioner in support of her argument that the ALJ met the clear and convincing reasons standard. (*See* Def.'s Br. at 4-5 & n.3.) The ALJ, however, never stated that Plaintiff's testimony was undermined by the fact that he engaged in "conservative treatment." Accordingly, the Court cannot affirm the ALJ's decision on this ground. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196

convincing reason for discounting a claimant's symptom testimony. *See Ash v. Berryhill*, 676 F. App'x 632, 632-33 (9th Cir. 2017) (holding that the ALJ provided two clear and convincing reasons for discounting the claimant's testimony, including the fact that the claimant's "medications had been 'relatively effective' in controlling her symptoms"). Substantial evidence, however, does not support the ALJ's finding that medications have been effective in controlling Plaintiff's pain.

In her decision, the ALJ noted that Plaintiff "testified his pain medications are effective." (Tr. 23.) During the hearing, Plaintiff did testify that his pain medications are effective. (Tr. 46.) Plaintiff, however, also testified that during an acute flare-up of his pancreatitis, his pain medication simply reduces the pain to a level that would not necessitate a trip to the emergency room, but he is "still down for a few days." (Tr. 54.) Plaintiff also testified that on one occasion since the alleged onset date, he needed to visit the emergency room because his pain medication failed adequately to relieve his symptoms. (*Id.*) In light of this testimony, the evidence does not support the ALJ's conclusion that Plaintiff's medications are effective in controlling his symptoms. *See Ellefson v. Colvin*, No. 3:15-cv-00464-PA, 2016 WL 3769359, at *5 (D. Or. July 14, 2015) (holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony, and noting that "the ALJ's finding concerning plaintiff's medications fails to take into consideration the degree to which pain control was achieved"); *see also Stansfield v. Colvin*, No. 12-cv-10090, 2013 WL 6482780, at *6 (C.D. Cal. Dec. 10, 2013) ("[T]he ALJ's finding that plaintiff's pain was adequately controlled with medication is not

---

(1947) (stating that a reviewing court may not affirm an agency ruling for reasons not articulated by the agency); *see also Fenton*, 2015 WL 3464072, at *1 ("The Court is not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but the Court is permitted to consider additional support for a ground on which the ALJ relied.") (citation omitted).

supported by substantial evidence and, thus, is not a clear and convincing reason for rejecting her subjective pain allegations."); *Garcia v. Astrue*, No. 12-cv-00992, 2013 WL 1797029, at *14 (S.D. Cal. Mar. 13, 2013) ("[W]hile there is evidence supporting a statement that medication temporarily helped [one of the severe impairments], there is not substantial evidence supporting the ALJ's conclusion that [the claimant's] medication controlled her symptoms.").

### c. Conclusion

For these reasons, the Court concludes that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating that "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence") (citation omitted).

### B. Medical Opinion Evidence

#### 1. Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### 2.        Application of Law to Fact

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of his treating physician, Dr. Moroye. (Pl.'s Opening Br. at 19.) The Court disagrees.

On September 21, 2014, Dr. Moroye filled out a medical source statement prepared by Plaintiff's counsel. (Tr. 302-08.) In his medical source statement, Dr. Moroye stated that he has treated Plaintiff "for over a decade," Plaintiff suffers from "[s]evere pain in [his] abdomen intermittently" due to his chronic pancreatitis, and Plaintiff's prognosis is "[f]air to good." (Tr. 303.) Dr. Moroye also opined that Plaintiff would need to work at a reduced pace if he was employed full-time, Plaintiff's ability to sustain a normal work pace during a forty-hour workweek is "[v]ery poor," Plaintiff is "[i]ncapable of even 'low stress' jobs," Plaintiff can stand, sit, and walk for less than two hours in an eight-hour workday, Plaintiff can rarely twist, stoop, and crouch, Plaintiff can never climb ladders, Plaintiff can lift and carry no more than ten pounds, Plaintiff needs to avoid exposure to hazards and airborne irritants, and Plaintiff's impairments or treatment would cause him to miss work "[m]ore than four times a month." (Tr. 303-07.)

The ALJ set forth at least two specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Moroye's opinion. First, the ALJ discounted Dr. Moroye's opinion on the ground that it was inconsistent with the record as a whole, including objective medical evidence. (*See* Tr. 24-26, stating that Dr. Moroye's opinion was "not consistent with the record as a whole" or "with the relatively mild diagnostic findings of record," stating that Plaintiff's test results "were not that impressive," and noting that a "February 2013 abdominal CT scan show[ed] minimal stranding fat between pancreatic head and duodenum suggesting mild pancreatitis without visible complications," a "GI workup . . . came back negative," a "GI workup came back looking okay," Plaintiff was "in no distress" following a flare-up of his pancreatitis, and "there was no evidence of chronic pancreatitis on his EUS exam"). This was a specific and legitimate reason for discounting Dr. Moroye's opinion. *See Daley v. Berryhill*, ---- F. App'x ---- , 2018 WL 1573561, at *2 (9th Cir. 2018) (holding that the ALJ satisfied the specific and legitimate reasons standard, and noting that the treating physician's opinion was discounted because "it was inconsistent with objective medical evidence"); *Kohansby v. Berryhill*, 697 F. App'x 516, 517 (9th Cir. 2017) (holding that the ALJ met the specific and legitimate reasons standard, and that the "ALJ properly assigned little weight" to a doctor's opinion because it was inconsistent with "the mild to moderate imaging studies" and the "physical findings on exam"). Substantial evidence supports the ALJ's decision to discount Dr. Moroye's opinion on this ground. (*See* Tr. 236-37, indicating that on August 20, 2013, almost a year after the alleged onset of disability, Dr. Moroye noted that Plaintiff was referred to a specialist regarding his pancreatitis and his "GI actually came back negative[;]" Tr. 234-35, indicating that on February 6, 2014, Dr. Moroye noted that Plaintiff was "still in the process of filing for disability for his pancreas issues though[] the workup through GI actually did come

back looking okay," and Dr. Moroye "question[ed]" whether Plaintiff's primary impairment of pancreatitis was "still a major issue[;]" Tr. 320, indicating that on July 16, 2014, Dr. Moroye noted that Plaintiff "did get a workup last year through GI, who is not necessarily convinced that he had [a] chronic issue, though [Plaintiff] vehemently disagree[d]" and declined to seek a second opinion).

In his opening brief, Plaintiff argues that substantial evidence does not support the ALJ's finding that his diagnostic test results were "relatively mild" and "not that impressive." (Pl.'s Opening Br. at 20-21.) In support of this argument, Plaintiff cites medical evidence that he believes is consistent with Dr. Moroye's opinion. Again, Plaintiff advances an alternative interpretation of the medical evidence, but the ALJ's interpretation of the evidence is rational and therefore must be upheld on appeal. *See Daley*, 2018 WL 1573561, at *2 ("Although Daley contends Dr. Jacobson's opinion is actually consistent with other medical evidence, his arguments essentially amount to advancing an alternative interpretation of the record. Because the ALJ's interpretation is rational, even if an alternative interpretation is available, this does not justify disturbing the decision.") (citation omitted).

Second, the ALJ discounted Dr. Moroye's opinion in favor of the conflicting opinion of the non-examining state agency medical consultant. (*See* Tr. 25-26, stating that "Dr. Lahr's review of the medical record does not support Dr. Moroye's opinion," and noting that the ALJ "prefer[s] the well-reasoned state agency opinion"). The Ninth Circuit has "'consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor.'" *Saenz v. Colvin*, No. 3:14– cv–01696–SI, 2015 WL 6123994, at *6 (D. Or. Oct. 16, 2015) (citation omitted); *see also Daley*, 2018 WL 1573561, at *2 (affirming the rejection of a treating physician's opinion, and noting

that the opinion was discounted because it was inconsistent with, *inter alia*, "medical opinion evidence").

Third, the ALJ discounted Dr. Moroye's opinion that Plaintiff's medication-induced fatigue causes him to nap for four to six hours a day based, in part, on the fact that "[t]here are no objective findings of record supporting a medical[] necessity to spend four to six hours a day napping." (Tr. 25.) As Plaintiff acknowledges, the ALJ did not err in discounting Dr. Moroye's opinion on this ground. (*See* Pl.'s Opening Br. at 25, noting that the ALJ appropriately discounted Dr. Moroye's opinion regarding Plaintiff's need to nap due to medication-induced fatigue, "especially given the unlikelihood of observed naps in a medical setting"; *see also* Pl.'s Opening Br. at 18, stating that a claimant "is required to present objective evidence of the alleged side effects [of medication] and cannot simply rely on subjective allegations alone") (citation omitted).

For all of these reasons, the Court concludes that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Moroye's opinion. *See Bailey v. Colvin*, 659 F. App'x 413, 415 (9th Cir. 2016) (holding that the ALJ provided two specific and legitimate reasons for rejecting the claimant's treating physician's opinions and, therefore, concluding that "[a]ny error in the ALJ's additional reasons for rejecting [the treating physician's] opinions was harmless" (citing *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015))); *see also Shoemaker v. Berryhill*, 710 F. App'x 750, 751 (9th Cir. 2018) (holding that the ALJ provided two specific and legitimate reasons for discounting the opinion of an examining psychologist and concluding that three erroneous reasons cited by the ALJ were harmless errors).

## C.    Remedy

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or

explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Specifically, the following "credit-as-true" criteria must be met before a court may remand for an award of benefits: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," (2) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," and (3) "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id.* Even when these "credit-as-true" criteria are satisfied, courts retain the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

Here, the Court need not address whether the credit-as-true criteria are met because, even assuming that those criteria are met, the record as a whole creates serious doubt as to whether Plaintiff is disabled. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) ("Here, we need not determine whether the three preliminary requirements are met because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled."). This case turns on whether Plaintiff is disabled as the result of the flare-ups of his pancreatitis. (*See* Tr. 40, "The severe impairment in this case, Your Honor, is really severe pancreatitis, which has caused him severe abdominal pain."). As discussed herein, the record includes evidence that calls into question whether Plaintiff is disabled as the result of his pancreatitis. (*See, e.g.*, Tr. 234-35, indicating that on February 6, 2014, Dr. Moroye noted that

Plaintiff was "still in the process of filing for disability for his pancreas issues though[] the workup through GI actually did come back looking okay," and Dr. Moroye "question[ed]" whether Plaintiff's primary impairment of pancreatitis was "still a major issue"). Accordingly, the Court concludes that a remand for further administrative proceedings is the appropriate remedy here.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 26th day of June, 2018.

_____
STACIE F. BECKERMAN
United States Magistrate Judge